Mr. J. Randy Young, P.E. Executive Director Arkansas Soil and Water Conservation Commission 101 E. Capitol, Suite 350 Little Rock, Arkansas 72201
Dear Mr. Young:
This is in response to your request for an opinion on the following question:
 Is A.C.A. §§ 19-11-801 through 805 applicable to Levee, Drainage and Conservation Districts when they procure professional services?
It is my opinion that the answer to your question is "no."
The statutory subchapter you reference was enacted as Act 616 of 1989 and provides that it is the policy of the State of Arkansas and "political subdivisions" that the state and political subdivisions shall negotiate contracts for legal, architectural, engineering, and land surveying services on the basis of demonstrated competence and qualifications for the type of service required and to prohibit the use of competitive bidding for the procurement of these services. The subchapter then sets out the procedure for "political subdivisions" to follow in the procurement of these services.
The relevant question is whether drainage, levee, and conservation districts are "political subdivisions" within the meaning of the subchapter. This term is not defined in the subchapter. The primary rule of statutory construction is to discern and give effect to the intention of the legislature. Royv. Farmers Merchants Ins. Co., 307 Ark. 213, 819 S.W.2d 2, (1991). I cannot, however, discern any satisfying evidence of legislative intent as to whether this term, as used in the subchapter, was intended to encompass these types of improvement districts. The statutory provisions creating these improvement districts (A.C.A. §§ 14-117-101—14-121-1009, A.C.A. §§ 14-123-101—507 and A.C.A. §§ 14-125-101—907) do not clearly indicate that they are "political subdivisions."[1] In certain provisions of the Arkansas Code, the term "political subdivision" is specifically defined to include improvement districts, for the particular purposes of a given subchapter.See e.g. A.C.A. § 8-5-301 (Repl. 1991), A.C.A. § 15-5-103
(Cum. Supp. 1991), A.C.A. § 15-6-103 (Cum. Supp. 1991), A.C.A. § 15-33-803(1987), and A.C.A. § 14-92-303 (1987) (consolidated improvement districts are "political subdivisions"). In at least one statute the term "political subdivision" is defined as specifically excluding improvement districts. See A.C.A. §14-75-101 (1987). In other statutes, the term "improvement district" is apparently distinguished from and listed in addition to the term "political subdivisions. See, e.g., A.C.A. §§1-2-110 (1987); 8-6-219 (Cum. Supp. 1991); 8-6-721 (Cum. Supp. 1991); 14-202-105 (1987); 18-13-120 (1987); 19-8-203 (1987);22-9-701 (1987); and 27-71-103 (Cum. Supp. 1991).
It is unclear, therefore, whether the term "political subdivision" as used in A.C.A. §§ 19-11-801—805 (Cum. Supp. 1991), includes these types of improvement districts. Absent a definition of the term in the subchapter, or any other statutory guidance, judicial decisions of this state may be looked to for guidance as to the construction of the term "political subdivision."
The term "political subdivision" has been defined generally by the Arkansas Supreme Court as meaning entities which:
 . . . embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing.
Muse v. Prescott School Dist., 233 Ark. 789, 791,349 S.W.2d 329 (1961). See also Arkansas Highway Commission v.Clayton, 226 Ark. 712, 715, 292 S.W.2d 77 (1956).
The question of whether improvement districts fall within the definition above may be subject to debate. It has been concluded specifically, however, by the Arkansas Supreme Court that drainage and levee districts are not "political or civil divisions of the state like counties and municipal corporations created to aid in the general administration of the government. They are not created for political purposes or for the administration of civil government." Drainage District #1 ofPoinsett County v. Hutchins, 184 Ark. 521 at 530. See alsoSpelling et al., v. Dewey et al., 122 F.2d (1941); Leuhrmann,et al. v. Drainage District #7 of Poinsett County, 104 F.2d 696
(1939); Drainage District # 2 v. Commerce Bank Trust Co.,69 F.2d 138 (1934). It is reasonable to conclude, in light of this language, that drainage and levee districts are not, generally speaking, "political subdivisions," and thus are not subject to the provisions of A.C.A. §§ 19-11-801—805. See alsogenerally, Op. Att'y Gen. No. 83-011, a copy of which is enclosed.
In addition, the specific provisions of law relating to the powers of drainage, levee, and conservation districts contain provisions relative to the employment of professional personnel such as engineers and lawyers. See, e.g., A.C.A. §§14-123-316 (levee district authorized to employ engineers);14-123-312 (levee district shall cause survey to be made by an engineer or some other person); 14-122-108 (drainage districts authorized to engage and pay attorneys, accountants, and to obtain such other professional and technical services as are necessary); 14-121-312 (drainage districts authorized to employ attorneys); 14-121-305 and Wallace v. McCartney, 159 Ark. 617,252 S.W.2d 600 (1923), (drainage district has authority to employ and pay engineers); 14-118-106 (an improvement district for a river authorized to employ attorneys); 14-125-305, (conservation district has authority to employ "technical experts.")
These provisions would therefore govern the employment of such professionals absent an implied repeal. See also A.C.A. §14-125-107 (if any provision of A.C.A. § 14-125-101 et seq.
with regard to conservation districts is inconsistent with other law, A.C.A. § 14-125-101 et seq. shall govern). Implied repeals are not favored in the law and will only be found where the conflict is clear and irresistible, or where the legislature takes up the whole subject matter anew and intends a latter enactment as a substitute for the former. Arkansas Day CareAss'n., Inc. v. Clinton, 577 F. Supp. 388 (E.D. Ark. 1983), andNance v. Williams, 263 Ark. 237, 564 S.W.2d 212 (1978). In my opinion neither of these conditions is present with regard to the statutes at issue.
It is my opinion, for all the foregoing reasons, that the answer to your question is "no."
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] See however, A.C.A. § 14-125-106 and § 14-125-303
indicating that conservation districts are "governmental subdivisions" of the state. Even if these districts are considered "political subdivisions," however, a provision in the subchapter governing them states that if any provision of that subchapter is inconsistent with any other law, the provisions of the subchapter shall govern. The authority granted such districts at A.C.A. § 14-125-305 to employ "technical experts" may thus control over the provisions of A.C.A. §§ 19-11-801—805 even if conservation districts can be considered "political subdivisions."